UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHIRLEY A. CHAVIS,

                                        Plaintiff,

v.                                                          5:11-CV-00220
                                                            (TJM/TWD)

MICHAEL J.  ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                            OF COUNSEL:

STEVEN R. DOLSON, ESQ.                  STEVEN R. DOLSON, ESQ.
*Counsel for Plaintiff*
6000 N. Bailey Avenue; Suite 1A
Amherst, NY 14228

HON. RICHARD S. HARTUNIAN               MARIA FRAGASSI SANTANGELO, ESQ.
United States Attorney for the          Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL               STEPHEN P. CONTE, ESQ.
Social Security Administration          Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

        This matter was referred to the undersigned for report and recommendation by the

Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to 28 U.S.C. §

636(b) and Northern District of New York Local Rule 72.3(d).  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.  For the reasons discussed below, it is recommended that the decision of the Commissioner of Social Security be vacated and this matter be remanded for further consideration.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is presently 56 years old.  (T. at 578.)  She completed seventh grade.  She has not taken any further educational courses or obtained any educational certificates.  (T. at 578-79.)  Plaintiff cannot read or write.  (T. at 579.)  She worked in the textile industry as a weaver for approximately twelve years.  *Id.*  Plaintiff alleges disability due to pain in her back and neck, occasional leg pain, knee pain and pain in her arms and feet.  (T. at 580-82.)  Plaintiff also alleges disability due to depression.  (T. at 590-91.)

Plaintiff applied for disability insurance benefits and SSI on March 24, 2006.[1]  The application was denied on June 30, 2006.  (T. at 277-81.)  Plaintiff requested reconsideration on August 3, 2006.  (T. at 289.)  The request for reconsideration was denied on October 17, 2006.  (T. at 292-94.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on October 25, 2006.  (T. at 295.)  The hearing was held on October 21, 2008.  (T. at 578-98.)  On January 23, 2009, the ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 18-28.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 29, 2010.  (T. at 8-11.)  Plaintiff commenced

---

[1]      The ALJ and the parties agree the application was filed on March 24, 2006.  (T. at 21; Dkt. No. 8 at 3; Dkt. No. 10 at 3.)  However, none of the parties cited to the actual application and it is not located in the transcript.

this action on February 21, 2011.  (Dkt. No. 1.)

## II.     APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2012).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2012).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2012).  "If at any step

a finding of disability or non-disability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the
> SSA will find non-disability unless the claimant shows that he has a
> "severe impairment," defined as "any impairment or combination of
> impairments which significantly limits [the claimant's] physical or
> mental ability to do basic work activities."  [20 C.F.R.] §§

3

404.1520(c), 416.920(c).   At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.   [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.   If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.   [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

4

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.    THE ALJ'S DECISION

The ALJ first addressed when Plaintiff last met the insured status requirements.  (T. at 23.)  An individual must demonstrate the onset of disability on or before his date last insured in order to qualify for Social Security disability benefits.  *Kohler*, 546 F.3d at 265.  Here, the ALJ

determined that Plaintiff's date last insured was March 31, 2009.  (T. at 23.)   Plaintiff makes no challenge to this determination.

The ALJ then made the following findings with regard to the period from Plaintiff's alleged onset date of February 10, 2006, through her date last insured of March 31, 2009:

1.    The claimant did not engage in substantial gainful activity.  *Id.*

2.    Plaintiff had the following "severe" impairments: mild degenerative changes of the lumbar spine and a mood disorder.  *Id.* at 23-24.

3.    Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  *Id.* at 24-25.

4.    Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work.  *Id.* at 25-26.

5.    Plaintiff was unable to perform any past relevant work.  *Id.* at 26.

6.    Considering Plaintiff's age, education, work experience, and transferable work skills, Plaintiff was not disabled under the framework of the Medical-Vocational Guidelines.  *Id.* at 26-27.

## IV.    THE PARTIES' CONTENTIONS

Plaintiff makes the following claims:

1.    The ALJ erred when she failed to consider the Plaintiff's obesity in determining the Plaintiff's RFC.  (Dkt. No. 8 at 4-5.[2])

2.     The ALJ erred when she failed to properly assess the Plaintiff's credibility.  *Id.* at 6-8.

3.    The ALJ erred by failing to properly consider medical opinions in the record.  *Id.* at 8-9.

---

[2]    Page numbers in citations to the parties' briefs refer to the page numbers assigned by the Court's electronic filing system.

4.      The ALJ erred when she failed to consider Plaintiff's non-exertional impairments in determining Plaintiff's RFC and failed to rely on a vocational expert to determine what jobs, if any, Plaintiff could find and perform in the current economy.  *Id.* at 9-11.

Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 11.)

## V.     DISCUSSION

### A.     Plaintiff's Obesity

Plaintiff argues that the ALJ failed to consider her obesity when determining her RFC. (Dkt. No. 8 at 4-5.)  Plaintiff correctly notes that obesity was removed in 1999 from the Listing of Impairments, but maintains that the ALJ still should have considered it in combination with Plaintiff's other impairments.  *Id.* at 5.

"Obesity is not in and of itself a disability[.]"  *Cruz v. Barnhart*, No. 04 Civ. 9011 (GWG), 2006 U.S. Dist. LEXIS 26914, at * 25, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006) (citing S.S.R. 02-1p, 2002 WL 31026506, 67 Fed. Reg. 57859 (Sept. 12, 2002)). Nevertheless, S.S.R. 02-1p provides that a Listing is met "if there is an impairment that, in combination with obesity, meets the requirements of a listing.  For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  S.S.R. 02-1p, 2002 WL 31026506, at *57862. However, "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. . . . We will evaluate each case based on the information in the case record."  *Id.* at *6.

7

Moreover, an ALJ is not obligated to single out a claimant's obesity for discussion in all cases. *Cruz*, 2006 WL 1228581, at *9 (citing *Guadalupe v. Barnhart*, No. 04 CV 7644 (HB), 2005 U.S. Dist. LEXIS 17677, at * 26, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)). "Those circuits which have recently commented on this complaint have held that an ALJ's failure to explicitly address a claimant's obesity does not warrant remand . . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." *Guadalupe*, 2005 WL 2033380, at *6 (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552-53 (3d Cir. 2005) and *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)); *see also Stemple v. Astrue*, 475 F. Supp. 2d 527, 539 (D. Md. 2007) (noting that "some courts have found harmless error in certain cases where the ALJ fails to discuss a claimant's obesity") (citing, *inter alia*, *Cruz*, 2006 WL 1228581).

The record shows that treating physician James M. Rice, MD ("Dr. Rice") examined Plaintiff on May 3, 2006 and May 17, 2006 and found her to have a Body Mass Index ("BMI") of 33.7 and 33.0 on those respective dates.  (T. at 481 and 483.)  Clinical Guidelines describe a BMI of 30 or above as obesity.  S.S.R. 02-1p, 2002 WL 31026506, at *57860.  On May 3, 2006, he found her "mildly obese."   (T. at 483.)  While she complained of low back pain at the time of that examination, Dr. Rice found Plaintiff had a normal gait, normal station and no pelvic slant. *Id.* at 484.  She had full range of motion of the lumbosacral spine albeit with some discomfort. *Id.*  She could heel-toe walk; her reflexes were symmetrical;  straight leg raising tests were negative for radiculopathy; and she had full extension motion of her great toe.  *Id.*  He ordered an MRI scan of her spine.  *Id.*  On May 17, 2006 her examination was unchanged and Dr. Rice

noted she had "moderate obesity." *Id.* at 482.  The MRI showed mild degenerative changes, minimal disc disease and no significant disc pathology. *Id.*  He ordered physical therapy and suggested she go on a weight reduction program. *Id.*  He did not make any determination as to her disability status, but from the medical record notes Dr. Rice was clearly aware of Plaintiff's weight.

Plaintiff also treated during the relevant time period from February of 2006 to October of 2008 with Wayne Medical Group and was seen by providers Arif Choudhury, MD and M. Richard Acome, RPA-C ("Dr. Choudhury" and "PA Acome") at that group. *Id.* at 529-56.  Her weight was recorded in the records on most of the visits. *Id.*  She received pharmacological treatment for low back pain and depression, as well as sinus infections, allergies, smoking cessation, and intermittent knee, arm and shoulder pain. *Id.*  On June 27, 2008, Dr. Choudhury noted Plaintiff was "totally disabled *according to the p[atien]t*" (emphasis supplied). *Id.* at 533. He further stated she was "totally disabled since 2003 for low back pain/l-s spinal stenosis." *Id.* at 535.  On July 23, 2008, part of Dr. Choudhury's treatment plan was to have the patient lose weight. *Id.* at 532.  Clearly, Dr. Choudhury considered Plaintiff's obesity.

Plaintiff also treated with Maxton Family Practice providers Gene L. McLaughlin, PA-C and Jonathan D. Rowson, MD ("PA McLaughlin" and "Dr. Rowson") in 2006 and in prior years. *Id.* at 410-38.  In 2006, she was treated for acute gastrointestinal and throat infections, as well as diffusely tender, nonspecific pain in her back, hips, arms and shoulders. *Id.* at 410-17.  When she complained of hip and back pain on April 19, 2006, her physical exam showed full range of motion of both hips, and some diffuse tenderness in her thoracic and lumbar spine. *Id.* at 415. The x-rays of her hips and spine ordered at that visit showed nothing acute, but mild degenerative

changes in the lumbar spine and degenerative changes in the thoracic spine. *Id.* at 435-36. An orthopedic referral was planned. *Id.* at 414. On August 1, 2006, an exam showed Plaintiff had full range of motion of both upper and lower extremities, but diffuse tenderness in her shoulders, knees, hips and back and a restricted range of motion of her lumbosacral spine. *Id.* at 410. In a letter dated July 20, 2006, PA McLaughlin stated the Plaintiff had a "history of breast cancer, chronic back pain, depression, anxiety, hypertension, and chronic arthritis. Because of her major medical problems, the patient is disabled." *Id.* at 411. Her weight was recorded at each office visit Plaintiff had with Maxton Family Practice. *Id.* at 429.

Plaintiff was also treated at Wayne Regional Orthopaedics, PLLC by Frederick A. Kaempffe, MD and Samuel S. Bean, FNP ("Dr. Kaempffe" and "NP Bean") on four dates between November 21, 2005 and March 8, 2006 for mild right cubital tunnel syndrome causing numbness and tingling of the ring finger and little finger. *Id.* at 455-59. Right cubital tunnel release surgery was recommended, but it is not clear from the records if the surgery was ever accomplished. *Id.* at 455-56. Plaintiff's body weight was not recorded by Dr. Kaempffe or NP Bean on any of the four office visits and no surgical records of these providers were included in the complete Transcript.

General surgeon Stephen L. Lanuti, MD ("Dr. Lanuti") followed Plaintiff after her breast cancer surgery in 2000 through May of 2005. *Id.* at 385-409. He did not record her weight at office visits or make any statements concerning Plaintiff's disability status. *Id.* Dr. Lanuti's treatment dates precede the relevant application date of March 24, 2006.

Physical RFC Assessments were completed by Margaret Parrish, MD ("Dr. Parrish") on May 26, 2006 and by Jack N. Drummond, MD ("Dr. Drummond") on September 25, 2006. *Id.* at

492-99, 519-26.  Both physicians concluded the Plaintiff was capable of light duty work.  *Id.*  Dr. Parrish's RFC Assessment cites the records of Maxton Family Practice/PA McLaughlin, Wayne Regional Orthopaedics/Dr. Kaempffe, Dr. Rice and Dr. Lanuti.  *Id.* at 499.  Dr. Drummond cites the same records and updated records from those providers in his report.  *Id.* at 526.

In determining that the Plaintiff had the RFC to perform a full range of light work, the ALJ based her decision, in part, on the Physical RFC Assessments.  *Id.* at 25-26.  The Physical RFC Assessments considered the underlying medical records of treating providers who recorded and factored in Plaintiff's weight in treating Plaintiff.  *Id.* at 499, 526.  While the ALJ did not specifically discuss Plaintiff's obesity, she was not obligated to single it out for discussion.  *Cruz*, 2006 WL 1228581, at *9 (citing *Guadalupe*, 2005 WL 2033380, at *6).  In *Cruz*, 2006 WL 1228581 at *9, the Court held that "[t]here is no reason why the presence of obesity should by itself create a special duty to develop the record" where the plaintiff did not list obesity as a disabling impairment and the medical testimony and evidence before the agency, which included repeated references to the plaintiff's height and weight, were sufficient to enable the ALJ to be assured that the plaintiff's obesity had been considered by the medical sources.  *Id.* at *15.  Here, it is unclear as to whether or not Plaintiff listed obesity as a disabling impairment in her March 24, 2006 application because the application is not located in the Transcript.  *See* Footnote 1, *supra*.  However, a Disability Report of Contact in the Transcript indicates:

A. What are the illnesses, injuries, or conditions that limit your ability to work?

**Cancer in L breast, back/hip pain, spurs lower part of spine, depression, pinch nerve right elbow, arthritis in left foot, bursitis in both shoulders, joint disease all over, sexually and physically abused from birth to age 15.**

B. How do your illnesses, injuries, or conditions limit your ability to work?

11

**I stay in constant pain all over my body and can't hold out to work anymore. I can't hardly get around well and in my shoulder area it hurt to move or stretch in any way.**

(T. at 335.)

At her hearing before the ALJ on October 21, 2008, Plaintiff testified that depression and pain in her back, shoulders, knees, feet and elbows and tingling in two fingers prevent her from being able to work. *Id.* at 589-92, 595-96. After testifying about those conditions, she was specifically asked by the ALJ the following: "[h]ave we gone over everything that is affecting your ability to hold down any kind of full-time job?" *Id.* at 597-598. Plaintiff responded "No, there's nothing else." *Id.* at 598.

Since Plaintiff did not list or testify to obesity as a disabling impairment and the medical evidence considered by the ALJ made repeated references to Plaintiff's weight and BMI, I find the ALJ's failure to explicitly address Plaintiff's obesity does not warrant remand.

**B.    Plaintiff's Credibility**

Plaintiff asserts that the ALJ failed to properly assess her credibility because the ALJ did not specifically address the factors listed in SSR 96-7p and drew improper inferences and conclusions from Plaintiff's statements. (Dkt. No. 8 at 6-8.) Defendant argues that the ALJ committed no such errors. (Dkt. No. 10 at 21.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV. 9435 (JSR), 1999 U.S. Dist. LEXIS

4085, at * 15, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial

evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent

evidence in the record.  20 C.F.R. § 404.1529 (2012); *see also Foster v. Callahan*, No. 96-CV-

1858 (RSP/GJD), 1998 U.S. LEXIS 2751, at * 2, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3,

1998); S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  First, the ALJ must consider

whether there is an underlying medically determinable physical or mental impairment(s) that

could reasonably be expected to produce the claimant's pain or other symptoms.  S.S.R. 96-7p,

1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity,

persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no

impairment is found that could reasonably be expected to produce pain, the claimant's pain

cannot be found to affect the claimant's ability to do basic work activities.  An individual's

statements about his pain are not enough by themselves to establish the existence of a physical or

mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) that could reasonably be

expected to produce the claimant's pain or other symptoms has been established, the second step

of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain

or symptoms to determine the extent to which they limit the claimant's ability to perform basic

work activities.  *Id.* A claimant's symptoms can sometimes suggest a greater level of severity than

can be shown by the objective medical evidence alone.  *Id.*  When the objective evidence alone

does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the

ALJ must assess the credibility of the claimant's subjective complaints by considering the record

in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location,

13

duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating

factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve

symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the

claimant to relieve symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2012).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is

supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist.

LEXIS 6988, at *29-30, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v.*

*Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998

U.S. Dist. LEXIS 11595, at *19, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998)

("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings

are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony

and demeanor at the hearing.")).

### 1.      Objective Medical Evidence

In looking at the objective medical evidence in the record, the ALJ noted that the Plaintiff

testified she is disabled by pain in her upper and lower back, legs and knees.  (T. at 26 and 581.)

Plaintiff also claimed pain in her knees, feet, arms and hands.  *Id.* at 582, 587-88.  She has

depression, which causes her to avoid people.  *Id.* at 590.  The ALJ then noted that many of the

Plaintiff's subjective complaints are not supported by the objective medical evidence.  *Id.* at 26.

The objective medical evidence in the record shows that when Plaintiff complained of hip

and back pain on April 19, 2006, her physical exam showed full range of motion of both hips,

and some diffuse tenderness in her thoracic and lumbar spine.  *Id.* at 415.  The April 21, 2006

plain x-ray films of Plaintiff's hips, lumbar spine and thoracic spine obtained by the Maxton

Family Practice providers (PA McLaughlin and Dr. Rowson) showed mild degenerative changes

and no acute problems.  *Id.* at 435-36.  An orthopedic referral was planned.  *Id.* at 414.  On

August 1, 2006, an exam showed Plaintiff had full range of motion of both upper and lower

extremities, but diffuse tenderness in her shoulders, knees, hips and back and a restricted range of

motion of her lumbosacral spine.  *Id.*  at 410.

      Upon the referral of Maxton Family Practice, Plaintiff saw orthopedist Dr. Rice.  *Id.* at

487-88.  The record shows that Dr. Rice examined Plaintiff on May 3, 2006 and May 17, 2006.

*Id.* at 481, 483.  On May 3, 2006, she complained of low back pain, but on objective physical

testing Dr. Rice found she had a normal gait, normal station and no pelvic slant.  *Id.* at 484.  She

had full range of motion of the lumbosacral spine albeit with some discomfort.  *Id.*  She could

heel-toe walk; her reflexes were symmetrical; straight leg raising tests were negative for

radiculopathy; and she had full extension motion of her great toe.  *Id.*  He ordered an MRI scan

of her spine.  *Id.*  On May 17, 2006 her objective physical examination was unchanged.  *Id.* at

482.  The MRI showed mild degenerative changes, minimal disc disease, no significant disc

pathology and concluded that she had "very mild degenerative changes" and "no lateralizing disc

protrusion."  *Id.* at 489.

      Between February of 2006 to October of 2008 Plaintiff also sought medical care from

Wayne Medical Group (Dr. Choudhury and PA Acome) on approximately thirteen treatment

dates.  *Id.* at 529-56.  In addition to addressing complaints of sinus infections and allergies, she

received treatment for low back pain and depression, and intermittent knee, arm and shoulder

pain.  *Id.*  Objective plain hip x-rays completed on January 11, 2008 were normal.  *Id.* at 549.

Plaintiff complained of "feeling right knee pain for a few months" on September 5, 2008. *Id.* at

531. However, she did not express complaints of knee pain at office visits on April 11, May 6,

June 27, and July 23, 2008. *Id.* at 532-37. She did not complain of knee pain when seen in

October of 2008. *Id.* at 529. Objective physical tests of straight leg raising for radiculapathy

done on April, 11, May 8, and July 23, 2008 were normal. *Id.* at 532, 536-37.

With regard to Plaintiff's claim that her depression contributes to her inability to work,

the ALJ noted that Plaintiff received outpatient counseling and medication management at a

mental health clinic, but then asked that her case be closed a few months later. *Id.* at 24, 460-66.

The ALJ also noted that Plaintiff continued medication management through primary care

provider Dr. Choudhury. *Id.* at 24. A review of the medical records shows that Plaintiff's

depression was stable on medications from Dr. Choudhury. *Id.* at 529-42.

### 2.       Plaintiff's Subjective Complaints

Since the objective evidence alone does not substantiate the claimed intensity,

persistence, or limiting effects of the claimant's symptoms, the ALJ correctly turned the analysis

to the credibility of the claimant's subjective complaints and found them "less than fully

credible." *Id.* at 26.

As for her daily activities, the ALJ noted that Plaintiff "maintains a reasonable activity

level" and identified Plaintiff's testimony as to her activities. *Id.* Plaintiff testified she lives

alone in an upstairs apartment, and is able to do some light cleaning/housework and laundry. *Id.*

at 582-83. She can do some cooking and grocery shopping, bathe and dress herself. *Id.* at 584-

89. Although she does not own one, Plaintiff can drive a car. *Id.* at 586.

The ALJ also noted that Plaintiff had been treated for chronic back pain and depression

16

for which she took medication.  *Id.* at 23.  Plaintiff testified the medications gave her some relief, and occasional sleepiness was the only side effect.  *Id.* at 592-94.  The ALJ also noted that the medical records do not show any significant side effects from the medications.  *Id.* at 26.  Indeed, Dr. Choudhury identifies that Plaintiff's depression is stable on medications and he notes no side effects regarding the pain medication.  *Id.* at 529-42.  While sometimes standing, walking, bending, kneeling and reaching aggravate Plaintiff's pain, she testified that, in addition to pain medications, stretching and lying down help relieve the pain.  *Id.* at 582-86.

The ALJ also noted that Plaintiff's testimony was inconsistent "with her claims of isolation due to depression."  *Id.* at 26.  Plaintiff testified she had friends in her apartment complex, and shops with family and friends, and they sometimes help her.  *Id.* at 583-84.

Plaintiff argues that the ALJ erred in not properly considering Plaintiff's strong work history to bolster her credibility.  (Dkt. No. 8 at 7-8.)  However, while a plaintiff with a "good work record is entitled to substantial credibility when claiming an inability to work," *Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir. 1983), the disability must still be medically supported in the record.  Courts in this Circuit have held that *Rivera* does not compel an ALJ to find a plaintiff substantially credible based upon the plaintiff's work record alone.  *See Montaldo v. Astrue,* No. 10 Civ. 6163 (SHS), 2012 U.S. Dist. LEXIS 35250, at * 49-50, 2012 WL 893186 at *17-18 (S.D.N.Y. March 15, 2012) (assumption of credibility based upon work record can be rebutted by substantial evidence); *Johnson v. Astrue,* No. 07-CV-0322C, 2009 U.S. Dist. LEXIS 98702, at * 17, 2009 WL 3491300 at *7 (W.D.N.Y. Oct. 23, 2009) (good work history "cannot be a substitute for evidence of a medically supported disability").

Here, the ALJ found that the objective medical evidence did not substantiate Plaintiff's

claimed intensity, persistence and limiting effects of her symptoms, *see* Part B.1. *supra.*  The

ALJ also considered Plaintiff's statements regarding her activities.  Plaintiff could take care of

her own personal needs, drive and do light cooking, cleaning and grocery shopping.  (T. at 582-

89.)  She attended doctors visits.  *Id.* at 590.  The ALJ considered Plaintiff's medications, the

relief they provided and their minimal side effects.  *Id.* at 23, 26.  In short, the ALJ properly

considered Plaintiff's symptoms as well as the medical records in assessing her testimony and

credibility and found that her condition did not render her completely unable to work.  I find the

ALJ's determination to be supported by substantial evidence.

### C.    Medical Opinions in the Record

Plaintiff next contends that the ALJ erred in failing to properly consider medical opinions

in the record.  (Dkt. No. 8 at 8-9.)  Defendant asserts the ALJ properly considered treating source

providers' opinions, but gave them little weight.  (Dkt. No. 10 at 14.)

The medical opinions of a treating physician are given "controlling weight" as long as

they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques"

and are not inconsistent with other substantial evidence contained in the record.  20 C.F.R. §

404.1527(c)(2) (2012).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating

physician must consider various 'factors' to determine how much weight to give to the opinion."

*Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004).   These factors include: (1) the length of

the treatment relationship and frequency of examinations; (2) the nature and extent of treatment

relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the

opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other

factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(1)-(6) (2012).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion.  20 C.F.R. § 404.1527(c)(2) (2012).   Failure to provide "good reasons" for not crediting the opinion of a claimant's treating physician is a ground for remand.  *Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999); *Halloran,* 362 F.3d at 32-33.

Here the ALJ gave "little weight" to the statement of treating source PA McLaughlin that "the claimant is disabled because of her medical problems."  (T. at 25.)  In attributing little weight to the opinion, the ALJ explained that the determination of disability is reserved for the ALJ and "physician's assistants are not an acceptable source of medical opinion under the regulations."  *Id.* at 25.  Plaintiff acknowledges that "the ALJ does not have to treat the opinion of a physician's assistant as an acceptable medical source, but she cannot arbitrarily disregard it." (Dkt. No. 8 at 9.)

The ALJ's decision makes it clear that she did not "arbitrarily disregard" PA McLaughlin's opinion.  Rather, she gave it "little weight."  (T. at 25.)  Furthermore, the regulation provides that evidence from sources such as a physician assistant "may" be used to show an impairment and the effect on a claimant's ability to work.  20 CFR 404.1513(d) and 20 CFR 416.913(d) (2012).  Thus, Plaintiff is correct that the ALJ is not required under the regulations to treat PA McLaughlin's opinion as acceptable.  By giving the opinion little weight, the ALJ essentially found it unacceptable.

The ALJ also gave "little weight" to Dr. Choudhury's determination that the Plaintiff was totally disabled because again it is a determination reserved to the ALJ and because there is "no

objective support for Dr. Choudhury's assertion that the claimant has spinal stenosis."  (T. at 25.)

Both parties agree that the determination of a claimant's disability is a legal determination reserved to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183.  Dr. Choudhury's determination of disability dated June 27, 2008 states that the Plaintiff is "Totally disabled since 2003 for low back pain/l-s spinal stenosis."  (T. at 535.)  However, an MRI completed on February 25, 2004 found "no central stenosis within the lumbar spine" and concluded "no central stenosis is present."  *Id.* at 174, 175.  An MRI ordered by orthopedic specialist Dr. Rice, which was completed on May 11, 2006, found "no significant spinal stenosis" and concluded that Plaintiff had very mild degenerative disc disease without lateral disc protrusion.  *Id.* at 489.  Thus, Dr. Choudhury's opinion is not supported by the objective medical evidence.

As noted above, the ALJ stated her reason for giving "little weight" to the opinion of Dr. Choudhury - it was not supported by the objective medical evidence.  *Id.* at 25.  Since it is unclear, however, from the ALJ's opinion whether the ALJ considered the applicability of the treating physician rule, I have reviewed the entire record to ensure Plaintiff received the rule's procedural advantages and conclude that the substance of the rule was followed.

Although the ALJ did not specifically comment on any other factors to support the weight accorded Dr. Choudhury's opinion, the record shows he treated Plaintiff from August of 2005 to October of 2008.  (T. at 439-54, 529-56.)  He was her primary care provider who followed her for a variety of conditions including allergies, sinus infections and smoking cessation, as well as the pain and depression she claims prevents her from working.  *Id*.  His statement that Plaintiff was "totally disabled" was based upon what she told him.  *Id.* at 534-35 ("totally disabled since 2003 *according to the p[atien]t")* (emphasis supplied).  Moreover, the record shows that Dr.

20

Choudhury would not complete an RFC form for the Plaintiff when asked to do so.  (T. at 577.)

In light of the foregoing and considering the entire record and the ALJ's opinion, I find that the ALJ applied the substance of the treating physician rule.  The ALJ set forth good reasons for the "little weight" given to Dr. Choudhury's opinion and the record provides substantial evidence to support that finding.

**D.      Vocational Expert    .**

Plaintiff argues that the ALJ erred when she improperly assessed Plaintiff's non-exertional limitations in determining Plaintiff's RFC and then failed to obtain the testimony of a vocational expert to determine what jobs, if any, Plaintiff could find and perform in the current economy.  (Dkt. No. 8 at 9.)  As previously noted, the ALJ found that Plaintiff could perform light work, but was unable to perform her past relevant work.  (T. at 26.)  Defendant argues that a vocational expert was not necessary because Plaintiff's non-exertional limitations did not present significant limitations.  (Dkt. No. 10 at 17-18.)

**1.      RFC and Non-Exertional Limitations**

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing despite his or her impairments.  20 C.F.R. § 404.1545(a) (2012).  An  RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis.  *Id.; Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999)(Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §

404.1569a (2012).  Non-exertional limitations or impairments, including impairments that result

in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see*

*also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e)(2012).  Non-exertional limitations include

not only manipulative or postural functions such as reaching, handling, stooping and crouching,

but also mental difficulties such as difficulty functioning because of anxiety, nerves, depression,

lack of attention and concentration, and inability to follow instructions.  20 CFR § 404.169a(c)

(2012).  When making a RFC determination, an ALJ must specify those functions that the

claimant is capable of performing; conclusory statements concerning his or her capabilities,

however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150.  Further, "(t)he RFC assessment must

include a narrative discussion describing how the evidence supports each conclusion, citing

specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities,

observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  An administrative RFC

finding can withstand judicial scrutiny only if there is substantial evidence in the record to

support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150.

　　　　Plaintiff does not take specific issue here with the ALJ's assessment of her exertional

capabilities in determining her RFC.  With regard to non-exertional capabilities, however,

Plaintiff asserts that the ALJ failed to note her limitations on twisting and turning at the waist,

numbness and tingling in the fingers and depression and anxiety.  (Dkt. No. 8 at 10.)

　　　　Plaintiff is incorrect with regard to the ALJ's decision on her mental difficulties.  The

ALJ noted:

> [t]here is no evidence that a mental impairment imposes any limitations on the claimant's
> daily activities.  Any limitations on the claimant's social functioning due to a mental
> impairment are only moderate, given her testimony that she is able to socialize with

friends.  There is no objective evidence that a mental impairment imposes any limitations
on the claimant's concentration, persistence or pace, or has caused the claimant to
experience any episodes of decompensation.

(T. at 24.)  The ALJ also relied on State Agency medical consultants who found Plaintiff to have

appropriate mental RFC to perform substantial gainful activity.  *Id.* at 25; *see also* T. at 500-13,

514-17, 527.

 The Plaintiff is correct, however, that the ALJ did not address her physical complaints of

limitations in bending and twisting at the waist and her numbness and tingling in her fingers

when considering her RFC.  References in the records of treating source Dr. Choudhury show she

had pain when bending and with twisting and turning at the waist.  *Id.* at 529, 537.  Plaintiff also

testified she had trouble twisting and bending at the waist.  *Id.* at 579-80.   References in the

records of treating source Dr. Kaempffe indicate she had numbness and tingling in her fingers.

*Id.* at 455-58.  Plaintiff also testified she occasionally had difficulty holding on to objects because

her fingers get stiff.  *Id.* at 588-89.

 **2.    Vocational Expert**

 After considering Plaintiff's age, education, work experience and RFC, in conjunction

with the Medical-Vocational Guidelines, the ALJ concluded Plaintiff could perform jobs that

exist in the national economy.  *Id.* at 27.  With regarding to use of a vocational expert to reach

that conclusion, the ALJ specifically stated: "In the absence of any non-exertional limitations that

diminish the claimant's ability to perform unskilled work, the testimony of a vocational expert is

unnecessary."  *Id.*

 At step five, "there is only a limited burden shift to the Commissioner."  *Poupore v.*

*Apfel*, 566 F.3d 303, 306 (2d Cir. 2009).  Indeed, the Commissioner "need only show that there is

work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.* (citing 20 C.F.R. § 404.1560(c)).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a) (2012).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).  However, if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e) (2012).  The vocational expert may testify as to the existence of jobs in the national economy and as to the claimant's ability to perform any of those jobs, given his or her functional limitations.  *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 U.S. Dist. LEXIS 5125 at * 16, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

Plaintiff argues that the ALJ should have considered the Plaintiff's non-exertional limitations and then, in so doing, called upon a vocational expert to determine the jobs available to the Plaintiff in the current economy.  (Dkt. No. 10 at 10.)  Plaintiff is correct.  The ALJ's failure to address the Plaintiff's non-exertional physical limitations and then determine whether or not they significantly limited the range of work permitted by her exertional limitations require remand on those issues.

Based upon the foregoing, I am unable to conclude that the record provides substantial evidence for the ALJ's RFC determination because the ALJ did not set forth any findings as to Plaintiff's physical non-exertional limitations.  Accordingly, the matter must be remanded for a proper determination of Plaintiff's RFC considering any physical non-exertional limitations and the ALJ shall obtain the opinion of a vocational expert if Plaintiff's non-exertional limitations present significant limitations.  *See Bapp,* 802 F.2d at 605-06.

**WHEREFORE,** it is hereby

**RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[3] for further proceedings consistent with the above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: September 21, 2012
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[3]    Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).